IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| PURNIMA SHRIVASTAVA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:15-cv-11520 |
| v. | ) | |
| | ) | Hon. Mark. A. Goldsmith |
| RBS CITIZENS, N.A. and CITIZENS | ) | |
| FINANCIAL GROUP, INC. | ) | |
| (d/b/a CHARTER ONE BANK), | ) | |
| | ) | |
| Defendants. | ) | |

## **DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT**

Defendants, Citizens Bank, N.A. (improperly named in the Complaint as RBS Citizens N.A.) and Citizens Financial Group, Inc. (collectively, "Defendants"), by their counsel, hereby respond to Plaintiff, Purnima Shrivastava's ("Shrivastava" or "Plaintiff") Complaint as follows:

**Paragraph 1**: Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 7(b) of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 626(b) (the "ADEA"), which incorporates by reference Sections 16(c) and 17 of the Fair Labor Standards Act of 1938 (the "FLSA"), as amended, 29 U.S.C. §§ 216(c) and 217. There is also supplemental jurisdiction over these state law claims pursuant to 28 U.S.C. § 1367.

**Answer to Paragraph 1**: Defendants admit that jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331, 1337, 1343 and 1367. Defendants further admit that Plaintiff purports to bring claims pursuant to the Age Discrimination in Employment Act of 1967 and Michigan's Elliot-Larsen Civil Rights Act.

**Paragraph 2**: The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of Michigan, Southern Division.

**Answer to Paragraph 2**: Defendants state that Plaintiff worked in Sterling Heights, Michigan. To the extent not expressly admitted, Defendants deny the remaining allegations stated in this paragraph and specifically deny that any unlawful employment practices were committed.

**Paragraph 3**: Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), inasmuch as the Defendant has offices, conducts business, and can be found in the Eastern District of Michigan, and the cause of action set forth herein has arisen and occurred in the Eastern District of Michigan.

**Answer to Paragraph 3**: Defendants admit that venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) to the extent that the Defendants have offices, conduct business, and can be found in the Eastern District of Michigan. To the extent not expressly admitted, Defendants deny the remaining allegations stated in this paragraph.

**Paragraph 4**: Plaintiff is a 64-year-old female.

**Answer to Paragraph 4**: Upon information and belief, Defendants admit the allegations stated in this paragraph.

**Paragraph 5**: Plaintiff began her employment as a bank teller with Defendant in 2002, working at the Rochester Hills branch located at Adams Road and Walton until 2004, and at the Rochester Hills branch located at Rochester Road and Wabash from 2004 until 2013, when she was involuntarily transferred to the Sterling Heights branch located at Hall Road and Mound.

**Answer to Paragraph 5**: Defendants state that in 2002 Plaintiff was hired as a Teller for the Rochester Hills branch located at Adams and Walton Road. Defendants further state that in 2004 Plaintiff transferred to the Rochester Hills branch located at Rochester and Wabash Road and thereafter was promoted to the position of Senior Teller. Defendants further state that in 2013 Plaintiff transferred to the Sterling Heights branch located at Hall and Mound Road. To the

extent not expressly admitted, Defendants deny the remaining allegations stated in this paragraph.

**Paragraph 6**: RBS Citizens, N.A., is a nationally chartered bank conducting business in the State of Michigan, and operates its Charter One retail branch locations throughout the State of Michigan. RBS Citizens' principle place of business is One Citizens Plaza, Providence, Rhode Island.

**Answer to Paragraph 6**: Defendants state that RBS Citizens, N.A. is no longer in existence. However, when it did exist, RBS Citizens, N.A. was a nationally chartered bank that conducted business in the state of Michigan, and operated its Charter One retail branch locations throughout the state of Michigan. Its principle place of business was One Citizens Plaza, Providence, Rhode Island.

**Paragraph 7**: Citizens Financial Group, Inc. ("CFG") is a Delaware Corporation doing business in the State of Michigan. CFG is a financial holding company, and RBS Citizens, N.A. is a wholly owned subsidiary of CFG. CFG's principle place of business is One Citizens Plaza, Providence, Rhode Island.

**Answer to Paragraph 7**: Defendants deny that RBS Citizens, N.A. is a wholly owned subsidiary of Citizens Financial Group, Inc. Answering further, Defendants state that Citizens Bank, N.A. is a wholly owned subsidiary of Citizens Financial Group, Inc. Defendants admit the remaining allegations stated in this paragraph

**Paragraph 8**: At all relevant times, Defendant has continuously maintained a business in the State of Michigan, and has consistently employed at least 20 individuals.

**Answer to Paragraph 8**: Defendants admit the allegations stated in this paragraph.

**Paragraph 9**:   At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of the ADEA and the ELCRA.

**Answer to Paragraph 9**:   Defendants admit the allegations stated in this paragraph.

**Paragraph 10**:   Plaintiff received a Right-to-Sue letter dated January 29, 2015 (attached as Exhibit A).

**Answer to Paragraph 10**:   Defendants admit that, on January 29, 2015, at Plaintiff's request, the Equal Employment Opportunity Commission issued Plaintiff a Right-to-Sue-letter.

**Paragraph 11**:   As more specifically described below, since at least March 2013, Defendant has engaged in unlawful employment practices at its Charter One Bank location in Sterling Heights, Michigan (known as the Hall and Mound branch), in violation of the ADEA and the ELCRA.  Plaintiff alleges that since at least March 2013, she was subjected to a hostile work environment and ultimately terminated on March 17, 2014, because of her age, 63.

**Answer to Paragraph 11**:   Defendants state that Plaintiff purports to bring claims pursuant to the Age Discrimination in Employment Act of 1967 and Michigan's Elliot-Larsen Civil Rights Act.  Defendants deny that they have engaged in any unlawful employment practices with respect to Plaintiff or any other employees.  To the extent not expressly admitted, Defendants deny the remaining allegations stated in this paragraph.

**Paragraph 11(a)**:   On or about March 13, 2013, Plaintiff was involuntarily transferred to Charter One's Hall and Mound branch.

**Answer to Paragraph 11(a)**: Defendants state that on or about March 13, 2013, Plaintiff transferred to the Hall and Mound branch, which at the time operated as Charter One Bank.  To the extent not expressly admitted, Defendants deny the remaining allegations stated in this paragraph.

4

**Paragraph 11(b):** When Plaintiff transferred to the Hall and Mound branch, her new supervisor, Alaina Keen, was on maternity leave from the bank.

**Answer to Paragraph 11(b):** Defendants admit the allegations stated in this paragraph.

**Paragraph 11(c):** Keen returned to work as Plaintiff's direct supervisor in approximately June of 2013.

**Answer to Paragraph 11(c):** Defendants admit the allegations stated in this paragraph.

**Paragraph 11(d):** When Keen became Plaintiff's supervisor, Plaintiff had been working for Charter One as a bank teller for approximately 11 years and had little or no performance-related issues in the workplace.

**Answer to Paragraph 11(d):** Defendants state that Plaintiff was hired as a Teller on or around July 22, 2002. Defendants further state that Plaintiff was promoted to the position of Senior Teller on or around August 26, 2004 and held this position until her termination on or around March 17, 2014. To the extent not expressly admitted, Defendants deny the remaining allegations stated in this paragraph.

**Paragraph 11(e):** Starting on or about June 2013, Keen subjected Plaintiff to age-based derogatory comments, including asking her, "when are you going to retire?" and telling her she was "slow," on a regular basis.

**Answer to Paragraph 11(e):** Defendants deny the allegations stated in this paragraph.

**Paragraph 11(f):** Keen also began commenting that Plaintiff was not reaching her monthly "referral goals" (i.e. opening new accounts), which were tied to her bonus wages.

**Answer to Paragraph 11(f):** Defendants state that Keen coached Plaintiff for, among other things, Plaintiff's failure to meet her quarterly referral goals, which were tied to Plaintiff's

5

compensation. To the extent not expressly admitted, Defendants deny the remaining allegations stated in this paragraph.

**Paragraph 11(g)**: Plaintiff had typically met her referral goals during the several years she worked as a bank teller at Charter One.

**Answer to Paragraph 11(g)**: Defendants respond that the phrase "typically met her referral goals during the several years she worked as a bank teller" is too vague and ambiguous to permit a meaningful response, and that Plaintiff's performance evaluations speak for themselves. Answering further, Defendants deny that Plaintiff was meeting the legitimate performance expectations of her job at the time of her termination.

**Paragraph 11(h)**: Keen also asked Plaintiff on at least two occasions how she could have possibly obtained favorable reviews from prior branch managers given her present performance at Keen's branch.

**Answer to Paragraph 11(h)**: Defendants state that Keen coached Plaintiff in an effort to help Plaintiff improve her job performance and that Plaintiff was not meeting the legitimate performance expectations of her job at the time of her termination. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations stated in this paragraph.

**Paragraph 11(i)**: During her several years working as a bank teller prior to being transferred to Keen's branch, Plaintiff had typically received favorable reviews from her managers, particularly in the last few years leading up to the transfer.

**Answer to Paragraph 11(i)**: Defendants respond that phrase "several years working as a bank teller prior to being transferred to Keen's branch, Plaintiff had typically received favorable reviews" is too vague and ambiguous to permit a meaningful response. Answering further,

Defendants state that Plaintiff held the position of Senior Teller from August 26, 2004, until her termination on or around March 17, 2014. Defendants further state that the referenced documents speak for themselves.

**Paragraph 11(j)**: Plaintiff complained to other branch managers about Keen's hostile behavior toward her.

**Answer to Paragraph 11(j)**: Upon information and belief, Defendants deny the allegations stated in this paragraph.

**Paragraph 11(k)**: By November 2013, Plaintiff's work environment had become so hostile that she experienced stress-related illnesses, resulting in a necessary three week authorized medical leave.

**Answer to Paragraph 11(k)**: Defendants state that Plaintiff took an approved leave of absence from approximately October 24, 2013 to November 18, 2013. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation that Plaintiff experienced "stress-related illnesses." To the extent not expressly admitted, Defendants deny the remaining allegations stated in this paragraph.

**Paragraph 11(l)**: Soon after she returned from medical leave, on December 2, 2013, Keen placed Plaintiff on a Performance Improvement Plan for not meeting her referral goals at the Hall and Mound branch.

**Answer to Paragraph 11(l)**: Defendants state that Keen placed Plaintiff on a Performance Improvement Plan on or around December 2, 2013 for failing to achieve her referral goals at the Hall and Mound branch. To the extent not expressly admitted, Defendants deny the remaining allegations stated in this paragraph.

**Paragraph 11(m)**: During her several years working as a bank teller Charter One, Plaintiff had never been placed on a Performance Improvement Plan.

**Answer to Paragraph 11(m)**: Defendants admit the allegations stated in this paragraph.

**Paragraph 11(n)**: Ten days into the next quarter, on or about January 10, 2014, Plaintiff was issued a Final Written Warning for not meeting her referral goals since being placed on the Performance Improvement Plan.

**Answer to Paragraph 11(n)**: Defendants admit the allegations stated in this paragraph.

**Paragraph 11(o)**: By the end of January, Plaintiff met her referral goals and communicated that to Keen.

**Answer to Paragraph 11(o)**: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation concerning what Plaintiff communicated to Keen. Upon information and belief, Defendants deny the remaining allegations stated in this paragraph.

**Paragraph 11(p)**: Nevertheless, on or about January 28, 2014, Plaintiff received a Final Written Warning Extension. However, the complaint did not mention Referral Goals. Instead, it cited two customer complaints "regarding errors and time taken to process transactions."

**Answer to Paragraph 11(p)**: Defendants state that Plaintiff received a Final Written Warning Extension on or around January 28, 2014, that referenced, among other things, customer complaints "regarding errors and time taken to process transactions." Answering further, Defendants state that the referenced document speaks for itself. To the extent not expressly admitted, Defendants deny the remaining allegations stated in this paragraph.

**Paragraph 11(q)**: Notably, the narrative in the Final Written Warning Extension describes only clerical error, not "time taken to process transactions." The underlying clerical

8

errors were related to a new bank-wide computer system that had been implemented in September 2013.

**Answer to Paragraph 11(q)**: Defendants state that a new bank-wide computer system was implemented on or around September 2013. Defendants further state that the term "related" is too vague and ambiguous to permit a meaningful response. Answering further, Defendants state that the referenced document speaks for itself. To the extent not expressly admitted, Defendants deny the remaining allegations stated in this paragraph, and specifically deny the characterization that these complaints were limited to "clerical error."

**Paragraph 11(r)**:   By the end of February 2014, Plaintiff again met her referral goals and communicated that to Keen.

**Answer to Paragraph 11(r)**: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation concerning what Plaintiff communicated to Keen. Upon information and belief, Defendants deny the remaining allegations stated in this paragraph.

**Paragraph 11(s)**:   On or about March 17, 2014, Plaintiff was terminated despite having successfully completed her Performance Improvement Plan, i.e., meeting her referral goals.

**Answer to Paragraph 11(s)**: Defendants state that Plaintiff was terminated on or around March 17, 2014. Defendants deny that Plaintiff successfully completed her Performance Improvement Plan. To the extent not expressly admitted, Defendants deny the remaining allegations stated in this paragraph.

**Paragraph 11(t)**:   As "justification" for termination, Defendant cited four customer complaints that had been received in February regarding clerical error.

9

**Answer to Paragraph 11(t)**: Defendants state that at least four customer complaints were received in February 2014 regarding Plaintiff and that these complaints were a factor in Plaintiff's termination. Answering further, Defendants state that the referenced document speaks for itself. To the extent not expressly admitted, Defendants deny the remaining allegations stated in this paragraph, and specifically deny the characterization that these complaints were limited to "clerical error."

**Paragraph 11(u)**: Plaintiff observed other colleagues make similar clerical errors without repercussion.

**Answer to Paragraph 11(u)**: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation concerning what Plaintiff believes she "observed." Defendants further state that the term "colleagues" is too vague and ambiguous to permit a meaningful response, as it not limited in time or scope, such that it includes individuals who were not similarly-situated to her. Upon information and belief, Defendants deny the remaining allegations stated in this paragraph and specifically deny the characterization that the complaints raised against Plaintiff were limited to "clerical errors."

**Paragraph 11(v)**: The "justification for termination recommendation" also cited one customer complaint alleging Plaintiff was not customer friendly.

**Answer to Paragraph 11(v)**: Defendants state that on or around February 18, 2014, a customer complained that, among other things, the customer lacked confidence in Plaintiff's ability to perform her role accurately and that Plaintiff's choice of words and tone was not customer friendly. Defendants further state that the aforementioned complaint was a factor in Plaintiff's termination. Answering further, Defendants state that the referenced document speaks

10

for itself. To the extent not expressly admitted, Defendants deny the remaining allegations stated in this paragraph.

**Paragraph 11(w)**: The customer who complained that Plaintiff was not customer friendly was Keen's personal friend, who happened to engage in a counter transaction with Plaintiff and was allegedly displeased with Plaintiff's demeanor.

**Answer to Paragraph 11(w)**: Defendants state that on or around February 18, 2014, a customer complained that, among other things, the customer lacked confidence in Plaintiff's ability to perform her role accurately and that Plaintiff's choice of words and tone was not customer friendly. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation that the customer was Keen's personal friend.

**Paragraph 11(x)**: When Plaintiff was terminated, she learned that the "Referral Goals" program, for which she was placed on a Performance Improvement Plan in December 2013, had been discontinued by the bank by January 1, 2014, and had never been communicated to her.

**Answer to Paragraph 11(x)**: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations stated in this paragraph.

**Paragraph 11(y)**: Defendant replaced Plaintiff with an employee in her mid-30's who had previously worked at the Hall and Mound branch prior to Plaintiff's transfer to that branch.

**Answer to Paragraph 11(y)**: Defendants state that after Plaintiff's termination, two Universal Bankers began performing Plaintiff's former job duties and that one of those Universal Bankers had previously worked at the Hall and Mound branch. Answering further, Defendants state that both of the aforementioned Universal Bankers were under the age of 40. To the extent not expressly admitted, Defendants deny the remaining allegations stated in this paragraph.

11

**Paragraph 12**:   The effect of the practices complained of above, has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her age; and to cause Plaintiff emotional distress, mental anguish, and humiliation resulting from the adverse employment actions taken against her.

**Answer to Paragraph 12**:   Defendants deny the allegations stated in this paragraph.

**Paragraph 13**:   The unlawful employment practices complained of above were willful and deliberate within the meaning of Section 7(b) of the ADEA, 29 U.S.C. § 626(b), and the ELCRA.

**Answer to Paragraph 13**:   Defendants deny the allegations stated in this paragraph.

### Affirmative Defenses

### First Defense

Plaintiff fails, in whole or in part, to state a claim upon which relief can be granted.

### Second Defense

At all times, Defendants acted in good faith with respect to Plaintiff and did not willfully, maliciously or recklessly violate any federal or state laws in its treatment of Plaintiff. Therefore, Plaintiff is not entitled to punitive, liquidated, and/or exemplary damages.

### Third Defense

The Complaint, and each purported cause of action contained therein, is barred by the fact that any actions taken against Plaintiff were for legitimate, nondiscriminatory, and non-retaliatory reason, which was not arbitrary, capricious or unlawful.

### Fourth Defense

If Plaintiff suffered any damages as a result of the facts alleged in her Complaint, which Defendants deny, Plaintiff is not entitled to recover the amount of damages alleged or any

damages due to her failure to make reasonable efforts to mitigate or minimize the damages incurred.

### Fifth Defense

If Plaintiff suffered any emotional distress (and Defendants deny that Plaintiff suffered any such distress), this emotional distress was proximately caused by factors other than the actions of Defendants, or anyone acting on behalf of Defendants.

### Sixth Defense

Plaintiff's claims are barred to the extent she failed to comply with applicable statutes of limitations.

### Seventh Defense

Plaintiff's claims are barred to the extent she failed to exhaust administrative remedies.

### Eighth Defense

Even if Plaintiff should prove that age or any other protected status was a substantial factor motivating the challenged employment actions, which Defendants deny, the same actions would have been taken based on legitimate considerations.

### Ninth Defense

Punitive damages are not recoverable under Michigan's Elliot-Larsen Civil Rights Act.

### Tenth Defense

Plaintiff's claim for physical, mental or emotional damages and lost wages, in whole or in part, may be barred by the exclusive remedy provision of the Michigan Worker's Disability Compensation Act, MCL 418.101, *et seq.*

WHEREFORE, Defendants Citizens Bank, N.A. and Citizens Financial Group, Inc. respectfully request that this Honorable Court (i) find in their favor and against Plaintiff on each and every claim asserted herein; (ii) dismiss Plaintiff's complaint in its entirety, *with prejudice*; (iii) award Defendants all attorneys' fees and costs expended in defense of this case; and (iv) award Defendants such other relief as this Honorable Court deems just and appropriate.

Dated: May 27, 2015.

                Respectfully submitted,

                **CITIZENS BANK, N.A. and CITIZENS FINANCIAL GROUP, INC.**

                By:   /s Edward C. Young
                           One of its Attorneys

Jason P. Klingensmith (Bar No. P61687)
Frederick R. Dewey (Bar No. P76451)
Dickinson Wright PLLC
500 Woodward Avenue, Suite 4000
Detroit, Michigan 48226
Phone: 313-223-3500
Email: jklingensmith@dickinsonwright.com
Email: fdewey@dickinsonwright.com

Edward C. Young (IL Bar No. 6310543)
Proskauer Rose LLP
Three First National Plaza
70 West Madison Street
Chicago, IL 60602
Phone: (312) 962-3550
Email: eyoung@proskauer.com

## CERTIFICATE OF SERVICE

      I, Edward C. Young, one of the attorneys for Defendants Citizens Bank, N.A. and Citizens Financial Group, Inc., certify that I caused a copy of the attached Defendants' Answer to Plaintiff's Complaint to be served by email via the Court's ECF Filing System on:

Anjali Prasad<br>
Attorney for Plaintiff<br>
Flood Law PLLC<br>
401 North Main Street<br>
Royal Oak, Michigan  48067<br>
Email: aprasad@floodlaw.com

this 27th day of May, 2015.

                                                              /s Edward C. Young